UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| SHELTON WILLIAMS,<br><br>     Plaintiff,<br> v.<br><br>CENTURY SECURITY SERVICES, INC.,<br><br>     Defendant. | CIVIL ACTION NO. 24-CV-00385<br><br>(MEHALCHICK, J.) |

**MEMORANDUM**

Presently before the Court is a motion to dismiss filed by Defendant Century Security Services, Inc. ("Century") on April 9, 2024. (Doc. 7). On March 4, 2024, Plaintiff Shelton Williams ("Williams") filed a complaint against Century alleging race discrimination, discriminatory termination, and retaliation in violation of federal and Pennsylvania law. (Doc. 1). For the following reasons, Century's motion to dismiss shall be **DENIED**. (Doc. 7).

**I. BACKGROUND AND PROCEDURAL HISTORY**

The following background and factual summary are derived from Williams's complaint. (Doc. 1). On or about April 1, 2022, Williams, an African American male, began working as a security officer at Century, where he performed his duties satisfactorily until his termination. (Doc. 1, ¶¶ 13-15). In August 2022, Century's owner Mary Ruane ("Ruane") hired her longtime friend Phillip Luca ("Luca"), a white male, as a security officer. (Doc. 1, ¶ 16).

During their time working on shifts together, Luca repeatedly made harassing comments to Williams about Williams's race, including using the n-word to refer to African Americans and blaming African-Americans for "looting" and "burning down your own neighborhoods." (Doc. 1, ¶¶ 17-19). In September 2022, Luca said to Williams, "if there was

a race war, black guys would lose the war [. . .]." (Doc. 1, ¶ 18). On September 22, 2022, Luca threatened Williams's life. (Doc. 1, ¶¶ 20-22). Luca began talking to Williams about a potential German invasion and theoretical resulting draft. (Doc. 1, ¶ 21). When Williams said he would be unable to be around weapons, Luca said "[i]f you can't find a weapon, I'll arm you. And if you don't take it, I'll put my gun to your head and pull the trigger." (Doc. 1, ¶ 22). Williams alleges that he was so disturbed by the threats of violence that he requested to leave work early. (Doc. 1, ¶ 23). The next day, Luca was not scheduled to work, but arrived at work to return a company phone that he accidentally took with him. (Doc. 1, ¶¶ 24-25). Luca returned the phone to Williams while carrying a loaded gun. (Doc. 1, ¶¶ 25, 29). Given Luca's past harassment and comments, Williams was scared when Luca approached him with a loaded gun. (Doc. 1, ¶ 27).

On September 26, 2022, Williams met with Ruane to complain about Luca's discriminatory behavior and submitted a written complaint detailing Luca's harassment. (Doc. 1, ¶¶ 28-30). Ruane responded to the complaints by excusing Luca's behavior because Luca was "from a different era" and "just talks like that." (Doc. 1, ¶¶ 31, 34). During the meeting, Williams also mentioned that he had a criminal record to explain why Williams said he was not able to be around weapons. (Doc. 1, ¶ 32). Ruane responded that she did not know about Williams's criminal record and that he was technically not supposed to be placed at his current working location at the Guardian Insurance Building with a criminal record. (Doc. 1, ¶¶ 32, 35). However, Ruane then said, "if you don't say nothing, I won't say nothing," implying that she would say nothing about his continued employment with a criminal record if Williams said nothing more about any race discrimination or harassment. (Doc. 1, ¶ 35).

After the meeting, Williams returned to work and continued to work without issue for

the month of October. (Doc. 1, ¶ 36). On November 1, 2022, Century's general manager, James Kokina, called Williams and fired him, citing his criminal record. (Doc. 1, ¶ 37). Williams was confused by this, as he was hired eight months earlier, had worked satisfactorily during that time, and completed a background check successfully in April. (Doc. 1, ¶¶ 13-15, 38-39, 42). Williams alleges that Century objected to Williams's criminal record only after he complained about race discrimination and that Century terminated his employment because of his race and his complaints of harassment. (Doc. 1, ¶¶ 43-47). Williams contends that as a result, he has suffered severe emotional distress and physical ailments, discrimination, humiliation, embarrassment, and financial loss because of Century's conduct. (Doc. 1, ¶¶ 48-51).

On March 4, 2024, Williams filed his complaint asserting claims of race discrimination and retaliation in violation of § 1981, Title VII, and the Pennsylvania Human Relations Act ("PHRA"). (Doc. 1). On April 9, 2024, Century filed a motion to dismiss. (Doc. 7). On April 23, 2024, Century filed a brief in support of its motion to dismiss. (Doc. 10). On May 7, 2024, Williams filed a brief in opposition. (Doc. 12). Accordingly, the motion to dismiss has been fully briefed and is ripe for disposition. (Doc. 7; Doc. 10; Doc. 12).

II.   **LEGAL STANDARD FOR MOTION TO DISMISS**

Rule 12(b)(6) of the Federal Rules of Civil Procedure authorizes a defendant to move to dismiss for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To assess the sufficiency of a complaint on a Rule 12(b)(6) motion, a court must first take note of the elements a plaintiff must plead to state a claim, then identify mere conclusions which are not entitled to the assumption of truth, and finally determine whether the complaint's factual allegations, taken as true, could plausibly satisfy the elements of the legal

claim. *Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 221 (3d Cir. 2011). In deciding a Rule 12(b)(6) motion, the court may consider the facts alleged on the face of the complaint, as well as "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007).

After recognizing the required elements which make up the legal claim, a court should "begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). The plaintiff must provide some factual ground for relief, which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "[T]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. Thus, courts "need not credit a complaint's 'bald assertions' or 'legal conclusions' . . . ." *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997) (quoting *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1429-30 (3d Cir. 1997)). Nor need a court assume that a plaintiff can prove facts that the plaintiff has not alleged. *Associated Gen. Contractors of Cal. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983).

A court must then determine whether the well-pleaded factual allegations give rise to a plausible claim for relief. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Palakovic v. Wetzel*, 854 F.3d 209, 219-20 (3d Cir. 2017) (quoting *Iqbal*, 556 U.S. at 678) (internal quotation marks omitted); *see also Sheridan v. NGK Metals Corp.*, 609 F.3d 239, 262 n.27 (3d Cir. 2010). The court must accept as true all allegations in the complaint, and any reasonable inferences that can be drawn therefrom are to be construed

in the light most favorable to the plaintiff. *Jordan v. Fox, Rothschild, O'Brien & Frankel*, 20 F.3d 1250, 1261 (3d Cir. 1994). This "presumption of truth attaches only to those allegations for which there is sufficient factual matter to render them plausible on their face." *Schuchardt v. President of the U.S.*, 839 F.3d 336, 347 (3d Cir. 2016) (internal quotation and citation omitted). The plausibility determination is context-specific and does not impose a heightened pleading requirement. *Schuchardt*, 839 F.3d at 347.

### III. DISCUSSION

#### A. WILLIAMS PROPERLY ALLEGED INTENTIONAL DISCRIMINATION IN HIS § 1981 CLAIM

The parties dispute whether Williams § 1981 claim fails as a matter of law. (Doc. 1, at 8; Doc. 10, at 8-10; Doc. 12, at 11). Century argues that Williams has not stated a cognizable claim under § 1981 because he does not allege purposeful discrimination and "does not plausibly allege how his race could be the 'but for' cause of his termination" when Century informed Williams that his criminal record was the reason for his termination. (Doc. 10, at 9). Williams responds that he sufficiently alleged illegal discrimination on the part of Century by averring that (1) his "termination happened eight (8) months after his hire, and eight (8) months after he participated in, and consented to, a background check [. . . and thus,] he reasonably believed his termination was not due to his record" and (2) "that the reason proffered, his criminal record, is race-based discrimination in itself due to disparate arrest and incarceration rates among African-Americans." (Doc. 12, at 12).

One of the purposes of § 1981 is to eliminate race-based discrimination in contracting. *See Anderson v. Wachovia Mortg. Corp.*, 609 F. Supp. 2d 360, 367 (D. Del. 2009) *aff'd*, 621 F.3d 261 (3d Cir. 2010) ("Title 42 U.S.C. § 1981 guarantees each person, regardless of race or citizenship, freedom from discrimination in the making and enforcing of contracts.") (quoting

*Thomas v. First F.S.B. of Ind.,* Civ. No. H 84–716, 1986 WL 15552, at *2 (N.D. Ind. July 30, 1986)). A § 1981 claim is distinct from a breach of contract claim because a § 1981 claim focuses on the discriminatory intent behind a party's conduct that has interfered with the making or performance of a contract. *Cf. Anderson*, 609 F. Supp. 2d at 367. To state a § 1981 claim, a plaintiff "'must allege facts in support of the following elements: (1) [that plaintiff] is a member of a racial minority; (2) intent to discriminate on the basis of race by the defendant; and (3) discrimination concerning one or more of the activities enumerated in the statute[,] which includes the right to make and enforce contracts....'" *Brown v. Philip Morris Inc.*, 250 F.3d 789, 797 (3d Cir. 2001) (quoting *Yelverton v. Lehman,* No. Civ. A. 94–6114, 1996 WL 296551, at *7 (E.D. Pa. June 3, 1996), *aff'd. mem.*, 175 F.3d 1012 (3d Cir.1999)). The Third Circuit has held that dismissal of a § 1981 is appropriate when "it appears to a certainty that [a plaintiff] could not prove facts which would bring [them] within the intentional or purposeful discrimination test." *Richardson v. Pennsylvania Dep't of Health*, 561 F.2d 489, 492 (3d Cir. 1977). Additionally, plaintiffs must initially plead that "but for race, it would not have suffered the loss of a legally protected right." *Comcast Corp. v. Nat'l Ass'n of Afr. Am.-Owned Media*, 589 U.S. 327, 341 (2020). However, the but-for burden is slightly less rigorous at the motion to dismiss stage, with district courts in this Circuit emphasizing that multiple but-for reasons for the same action are possible and at this stage, a "plaintiff must [only] allege facts that are 'sufficient to raise the inference that her protected activity was the *likely* reason for the adverse [employment] action.'" *AMY STANKIEWICZ, Plaintiff v. PUMP N' PANTRY, INC., & PUMP N' PANTRY, INC., Defendants*, No. 3:20-CV-2021, 2022 WL 36238, at *3 (M.D. Pa. Jan. 4, 2022); *see also Carvalho-Grevious v. Del. State Univ.*, 851 F.3d 249, 259 (3d Cir. 2017) (noting that but-for causation has a lower burden at the *prima facie* stage).

Williams has properly pled facts that allow this Court to infer that Century intentionally discriminated against him. (Doc. 1). He contends that he successfully completed a background check prior to beginning his employment relationship with Century and that he had been working for Century for eight months with no issues related to his record arising. (Doc. 1, ¶¶ 37-42). Williams provides that at one point, Ruane implied that she would "say nothing" about his criminal record and eligibility for employment if he said nothing further about race discrimination. (Doc. 1, ¶¶ 35-39). Williams additionally alleges that termination for a criminal record can constitute intentional race discrimination because of race disparities in the criminal justice system. (Doc. 1, at 6 n.2). Considering these allegations together, this Court cannot say with certainty that Williams will be unable to prove facts that show purpose or intent to discriminate. *See Richardson*, 561 F.2d at 492 (finding that allegations that an employer used the results of racially discriminatory testing procedures to make employment decisions may satisfy the purposeful element of § 1981 race discrimination and concluding that, under the motion to dismiss standard, it is premature to dismiss a complaint where plaintiff could later prove facts under the intentional or purposeful discrimination test); *see also Aquino v. Hazleton Area Sch. Dist.*, No. 3:24-CV-00206, 2024 WL 4592346, at *10 (M.D. Pa. Oct. 28, 2024) ("An invidious discriminatory purpose may often be inferred from the totality of the relevant facts," or in the context of a motion to dismiss, the alleged facts.) (citing *Richardson*, 561 F.2d at 492).

Further, Century's argument that Williams cannot state a § 1981 claim because he does not allege that race was the "but-for" reason for his termination also fails. (Doc. 10, at 8-9). Williams's allegations question that his criminal record was the rationale for his termination when he contends that he completed a background check in April, worked

successfully for eight months, and was fired in November after experiencing and reporting allegedly racist comments and threats by a coworker. (Doc. 1, ¶¶ 37-42). *See Stankiewicz*, 2022 WL 36238, at *3 (holding that a plaintiff must merely allege facts that allow a court to infer that discrimination was a likely reason for termination). It is true that Century gave Williams an alternative rationale for his firing: that he had a criminal record. (Doc. 1, ¶ 37). However, Williams's allegation, taken as true, that Century "would not have harassed [him] but for his race" coupled with the totality of Williams's other factual allegations that question Century's proffered reason, allows this Court to infer that discrimination may have been a but-for rationale involved in Century's decision. (Doc. 1, ¶ 46); *cf. Bostock v. Clayton Cnty., Georgia*, 590 U.S. 644, 656 (2020) ("Often, events have multiple but-for causes.").

Accordingly, Century's motion to dismiss Count One on the grounds that Williams did not allege purposeful discrimination or that his race was the but-for reason for his termination is **DENIED**. (Doc. 7).

> B. WILLIAMS ALLEGED THAT HE WAS QUALIFIED FOR HIS POSITION IN HIS DISCRIMINATORY TERMINATION CLAIMS

The parties next dispute whether Williams has properly stated claims for discriminatory termination. (Doc. 1; Doc. 10, at 9; Doc. 12, at 13).[1] Century submits that Counts One, Two, and Four of Williams's complaint must be dismissed because Williams has not properly shown that he was qualified for his position because of the existence of the Pennsylvania Private Detective Act ("PPDA"), which prohibits Century from employing individuals convicted of a felony as security guards. (Doc. 10, at 9). Williams responds that he was qualified for the position, and that the role that the PPDA played in his termination

---

[1] Century does not address Williams' hostile work environment claims. The Court therefore will consider this claim not disputed.

8

can be considered in a mixed-motive analysis, but that such an inquiry is not proper at the motion to dismiss stage. (Doc. 12, at 14-15).

Discrimination claims brought under Title VII and the PHRA are analyzed under the same standard. *See Verma v. Univ. of Pennsylvania*, No. 11-611, 2012 WL 1835727, at *7 (E.D. Pa. May 18, 2012); *see also Brennan v. Century Sec. Servs.*, No. 3:21-CV-01678, 2023 WL 2504760, at *8 (M.D. Pa. Mar. 14, 2023). To sufficiently allege a claim of unlawful discrimination under both statutes, a plaintiff must demonstrate (1) that they are a member of a protected class; (2) that they are qualified for the position they are employed to do; (3) they suffered an adverse employment action; and (4) the action was taken under circumstances that give rise to an inference of unlawful discrimination. *See Lynch v. Tasty Baking Co.*, No. CV 23–4445, 2024 WL 2848295, at *2 (E.D. Pa. June 5, 2024) (citing *Makky v. Chertoff*, 541 F.3d 205, 214 (3d Cir. 2008)).

Williams satisfies the first element, that he is part of a protected class, by contending that he is an African American male. (Doc. 1, ¶ 7). Williams also satisfies the third element of his claims, that he suffered an adverse employment action, by alleging that he was terminated. (Doc. 1, ¶¶ 37, 43). "An 'adverse employment action' under Title VII is an action by an employer that is 'serious and tangible enough to alter an employee's compensation, terms, conditions, or privileges of employment.'" *Artz v. Cont'l Cas. Co.*, 720 F. Supp. 2d 706, 712 (E.D. Pa. 2010) (quoting *Cardenas v. Massey*, 269 F.3d 251, 263 (3d Cir. 2001)). Courts have consistently held that termination qualifies as an adverse action for the purposes of Title VII and the PHRA. *See Daniels v. Sch. Dist. of Philadelphia*, 776 F.3d 181, 196 (3d Cir. 2015) (recognizing termination to be an adverse action for the purposes of Title VII and the PHRA);

*see also LeBoon v. Lancaster Jewish Cmty. Ctr. Ass'n*, 503 F.3d 217, 232 (3d Cir. 2007) (recognizing termination of employment as an adverse action).

At issue here are only elements two and four. (Doc. 10, at 9-11; Doc. 12, at 14-15). Century submits that Williams cannot satisfy element two, that he was qualified for his position, because he had a criminal record which made his employment with Century illegal under the PPDA. (Doc. 10, at 9-11). Williams alleges that he successfully took part in a background check and that during his eight months of employment with Century, he "completed his duties satisfactorily." (Doc. 1, ¶¶ 13-15). Williams also provides that even after Ruane learned about Williams's criminal record, he continued working Century without issue for a month. (Doc. 1, ¶¶ 35-36). This Court previously noted that when an employee performed their duties successfully, they were qualified for the position under Title VII and the PHRA. *See Rhodes v. Northumberland Cnty.*, No. 4:23-CV-01807, 2024 WL 3258208, at *5 (M.D. Pa. July 1, 2024) (holding that an employee sufficiently pled that she was qualified for a position when she alleged that she performed her job duties well). Therefore, the Court is satisfied that Williams has adequately alleged that he was qualified for his position.

Courts have also held that an employer cannot defend itself against Title VII liability based by arguing that it had to fire an employee in order to comply with a state law. *See Reese v. Source 4 Tchrs.*, No. CV 17-4588, 2018 WL 3752987, at *6 (E.D. Pa. Aug. 8, 2018) (dismissing a Title VII claim on other grounds, but denying dismissal based on an employer's argument that it was required to fire an employee to comply with a state law that made it illegal to hire individuals with certain criminal convictions, including the ones on plaintiff's record). Williams alleges that he was qualified for the position given that he completed his job duties satisfactorily while working for Century. Notably, he also avers that even if the

PPDA was Century's sole rationale for his firing, compliance with such a law would violate Title VII given the disproportionate number of African American males with criminal convictions. (Doc. 1, at 6 n.2). In accordance with the conclusions of other federal courts, this Court finds that Title VII preempts state law, when compliance with such state law would have a disparate impact on a protected class. *See Reese*, 2018 WL 3752987, at *6. Therefore, Century's compliance with the PPDA is insufficient to shield it from Williams's claims at this posture of the case.

Williams has additionally satisfied the fourth element, that Century's actions "give rise to an inference of unlawful discrimination." *See Lynch*, 2024 WL 2848295, at *2. To determine whether a plaintiff has pled facts that establish an inference of unlawful discrimination, courts look to whether "the employer is treating 'some people less favorably than others because of their race, color, religion, sex, or national origin.'" *Sarullo v. United States Postal Serv.*, 352 F.3d 789 (3d Cir. 2003) (quoting *Pivirotto v. Innovative Sys.*, 191 F.3d 344, 352–353 (3d Cir. 1999)). While a plaintiff need not "compare [himself] to a similarly-situated individual from outside [his] protected class to raise an inference of unlawful discrimination," he must somehow connect the adverse action suffered to her protected class. *Artz*, 720 F. Supp. 2d at 713. As discussed *supra*, Williams alleges that he completed a background check and worked satisfactorily for Century for eight months with no issues related to his record or any other complaints about his work arising. (Doc. 1, ¶¶ 37-42). Williams also contends that Ruane stated that she would "say nothing" about his criminal record and eligibility for employment if he did not say anything about race discrimination at Century. (Doc. 1, ¶¶ 35-39). These allegations allow this Court to infer unlawful discrimination and support the conclusion that his termination occurred under circumstances that give rise to an inference of discrimination,

as he has established a link between his race and the bullying and harassment he suffered to his termination. (Doc. 1, ¶¶ 7-46); *see Bhatti v. Republican Caucus of Pennsylvania House of Representatives*, No. 18-CV-2178, 2020 WL 3412661, at *4 (M.D. Pa. June 22, 2020) (looking to the history surrounding a plaintiff-employee's termination as well as alleged "overt acts of discrimination" to determine plaintiff-employee had pled sufficiently facts giving rise to an inference of discrimination); *see also Abdul-Latif v. Cnty. of Lancaster*, 990 F. Supp. 2d 517, 527-28 (E.D. Pa. 2014) ("Showing that similarly situated non-members of the protected class were treated less favorably is one of a variety of methods to create an inference of discrimination"); *Rhodes*, 2024 WL 3258208, at *5 (inferring unlawful discrimination based on allegations of an employer conditioning sexism and racism and bullying based on race).

Accordingly, Century's motion to dismiss Williams's claims for unlawful termination is **DENIED**. (Doc. 7).

C. WILLIAMS ALLEGED THAT HE ENGAGED IN A PROTECTED ACTIVITY IN HIS RETALIATION CLAIMS

Century moves to dismiss Williams's retaliation claims on the grounds that Williams has not alleged that he engaged in a protected activity and Williams cannot show that there was a causal link between any protected activity. (Doc. 10, at 12-15).[2] Williams responds that Williams's complaint to the owner of Century, Ruane, is a protected activity. (Doc. 12, at 17-18).

Title VII's anti-retaliation provision "'protects those who participate in certain Title VII proceedings [. . .] and those who oppose discrimination made unlawful by Title VII [. . .]"

---

[2] Century also argues that it cannot be held liable for any retaliatory termination claims because Century had no choice but to fire Williams under the PPDA. (Doc. 10, at 12-15). Again, state law does not provide a defense to Williams's claims. *See Reese*, 2018 WL 3752987, at *6.

*Ellingsworth v. Hartford Fire Ins. Co.*, 247 F. Supp. 3d 546, 555 (E.D. Pa. 2017) (citing *Moore v. City of Philadelphia*, 461 F.3d 331, 341 (3d Cir. 2006) as amended (Sept. 13, 2006)). To plead a claim for retaliation under both Title VII and the PHRA, a plaintiff must show that: "(1) [the plaintiff] engaged in conduct protected by Title VII; (2) the employer took adverse action against [plaintiff][3]; and (3) a causal link exists between [plaintiff's] protected conduct and the employer's adverse action." *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 788 (3d Cir. 2016).

  Regarding the first element of Williams's retaliation claims, Williams has sufficiently pled that he engaged in protected activity. *See Connelly*, 809 F.3d at 788. An employee "engages in protected activity by complaining to his or her employer about conduct that is prohibited by Title VII." *Ellingsworth*, 247 F. Supp. 3d at 555 (citing *Connelly*, 809 F.3d at 792); *see also Wilson v. Columbia Gas of Pa.*, 676 F. Supp. 3d 424, 438 (W.D. Pa. 2023) ("'opposition to discrimination can take the form of informal protests of discriminatory employment practices, including making complaints to management.'" (citing *Moore*, 461 F.3d at 343)). Here, Williams alleges that "on September 26, 2022, [Williams] met with Ms. Ruane to complain about Mr. Luca's discriminatory and threatening behavior," which included threats to shoot Williams, repeatedly using the n-word, bringing a loaded gun to the workplace, and commenting that "[i]f there was a race war, blacks would lose." (Doc. 1, ¶¶ 17-30). Such allegations are sufficient for Williams to meet his burden as to the first element of his retaliation claim. *See Ellingsworth*, 247 F. Supp. 3d at 555-56 (finding plaintiff had sufficiently alleged protected activity in complaining to her supervisor about plaintiff's mistreatment and harassment).

---

[3] As discussed *supra*, termination is an adverse employment action. *Daniels,* 776 F.3d at 196. Thus, the Court will not re-analyze element two here.

As for the third element of Williams's retaliation claims, Century argues that Williams cannot allege a causal link between Williams's complaints and his termination because Century was legally required to terminate Williams's employment under the PPDA. (Doc. 10, at 12-15). As described *supra*, the PPDA does not shield Century from liability for Williams's retaliation claims. *See Reese*, 2018 WL 3752987, at *6. When determining whether there is a causal connection between a plaintiff's protected activity and adverse action, courts consider "whether there is an 'unusually suggestive' temporal proximity between the protected activity and adverse action or 'intervening antagonism or retaliatory animus, inconsistencies in the employer's articulated reasons for [the adverse action], or any other evidence in the record sufficient to support the inference of retaliatory animus.'" *Sousa v. Amazon.com, Inc.*, No. 22-3043, 2023 WL 7486751, at *4 (3d Cir. Nov. 13, 2023) (quoting *LeBoon*, 503 F.3d at 232-33 (citations and internal quotation marks omitted)). This causation analysis "is highly fact-based, and depends on the particular context in which the events occurred." *Mercer v. Se. Pennsylvania Transit Auth.*, 26 F. Supp. 3d 432, 447 (E.D. Pa. 2014), *aff'd sub nom. Mercer v. SEPTA*, 608 F. App'x 60 (3d Cir. 2015).

Williams alleges that he was terminated one month after complaining about racial harassment, despite working successfully for Century for eight months and completing a background check in April of 2022. (Doc. 1, ¶¶ 37-45). Williams further avers that Ruane implied that he would not be terminated due to his criminal record if he ceased speaking about the racial harassment. (Doc. 1, ¶ 35). For the purpose of a motion to dismiss, these allegations support that there was an unusually suggestive temporal proximity between Williams's complaints and his termination, as well as the ability to infer causation. *See Ellingsworth*, 247 F. Supp. 3d at 557 (finding plaintiff alleged facts sufficient to demonstrate a causal connection

14

between her protected activity and adverse employment action). Williams has sufficiently pled there was a causal connection between his protected activity and termination. *See Connelly*, 809 F.3d at 792-93 (finding that, in complaining to management about unwanted advances from a coworker, plaintiff "alleged facts that could support a reasonable inference of a causal connection between her protected activity in May 2010 and the gradual deterioration of her relationship with her employer until she was laid off in October 2010."). As the Court finds that Williams has sufficiently pled enough facts to satisfy all three elements of his retaliation claims, Century's motion to dismiss Williams's retaliation claims is **DENIED**. (Doc. 7).

### D. ADMINISTRATIVE EXHAUSTION

Century submits that Williams's PHRA claims must be dismissed for failure to exhaust. (Doc. 10, at 15). However, Williams's EEOC Complaint, filed on April 23, 2023, indicates that he requested that his charge be dually filed with the PHRA. (Doc. 12, at 18; Doc. 12-2, at 2). Therefore, he has begun the process of PHRA administrative exhaustion and awaits a right to sue notice. (Doc. 12-2). Williams also denotes in his complaint that the PHRA administrative claims are currently pending and that he has intent to raise PHRA claims after exhaustion, thus giving notice to Century for those claims. (Doc. 1, at 2 n.2). Thus, Century's motion to dismiss the PHRA claims is **DENIED** at this juncture. *See Chirico v. Borough of Delaware Water Gap*, No. 3:23-CV-00912, 2024 WL 1890299, at *5 (M.D. Pa. Apr. 30, 2024) (declining to dismiss PHRA claims due to failure to exhaust when a plaintiff received a right to sue from the EEOC but not the PHRC and "it is unclear at this point whether the PHRC has received [plaintiff's] complaint and initiated proceedings on his behalf.").

15

**IV.    CONCLUSION**

For the foregoing reasons, Century's motion to dismiss is **DENIED**. (Doc. 7).

An appropriate Order follows.

                                          **BY THE COURT:**

**Dated: January 13, 2025**                      *s/ Karoline Mehalchick*
                                                  **KAROLINE MEHALCHICK**
                                                  **United States District Judge**